2022 IL App (1st) 190403-U

FIFTH DIVISION
June 3, 2022

No. 1-19-0403

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 93 CR 27560 |
| | ) | |
| ARNEL ROBINSON, | ) | |
| | ) | Honorable Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Circuit court did not apply cause-and-prejudice test to one of the claims raised in a supplement to defendant's motion for leave to file a successive postconviction petition; reversed and remanded for further proceedings.

¶ 2    Defendant, Arnel Robinson, appeals the circuit court's denial of his motion for leave to file a *pro se* successive postconviction petition. On appeal, Robinson contends that we should remand for further proceedings because the circuit court did not analyze all of the claims he tried to

advance. We agree with Robinson, and reverse and remand so that the circuit court can apply the cause-and-prejudice test to all of his claims.

¶ 3                                  I. BACKGROUND

¶ 4                                  A. Bench Trial

¶ 5        In November 1993, Robinson and his codefendant, Antonio Segoviano, were charged with the first degree murder of Martin Alvarez and the attempted armed robbery of Alvarez and Onesimo Beltran. At Robinson's ensuing bench trial, Beltran testified that at around 4:30 p.m. on the day of the incident, he and Alvarez parked Beltran's truck in an alley around 31st and Lituanica in Chicago. Alvarez planned to buy a vehicle sticker at a nearby currency exchange. While waiting for Alvarez, Beltran heard two gunshots from behind the truck. There were six or seven people in the alley. Alvarez returned to the truck, and after he was inside, Beltran noticed that Alvarez was badly wounded and bleeding. Alvarez died from his injuries.

¶ 6        Mario Rodriguez testified that just after 4 p.m. that day, he was at some payphones near the currency exchange with Robinson, Segoviano, and a man he knew as Jay Jay. While Rodriguez waited to use the phone, Robinson showed him a gun that he kept at his waist. Segoviano told Robinson that he wanted to "make some money," to which Robinson replied, "okay," and adjusted the gun at his waist. Segoviano said that he would "find somebody" at the currency exchange. A short time later, Segoviano followed Alvarez, who was leaving the currency exchange, into an alley. Robinson shouted "give me your money" twice, then pulled out a gun and pointed it at Alvarez's head. Rodriguez panicked, and as he walked away, he heard two gunshots from the alley.

¶ 7        James Stillwell testified that he was drinking at someone's house on the morning of the incident, and later sold drugs on a nearby streetcorner for several hours. As he went back to the house, he looked down an alley and saw Robinson fire a gun at a man's back. Robinson fired a

second shot, and Stillwell fled back to the house. About 15 minutes later, Robinson arrived and admitted to killing Alvarez.

¶ 8 A police officer testified that at around 10 p.m. on the day of the incident, officers stopped Robinson while he was walking on the street.

¶ 9 Robinson was found guilty of first degree murder and the attempted armed robbery of Alvarez, and not guilty of the attempted armed robbery of Beltran. After a sentencing hearing, the trial court sentenced Robinson to consecutive prison terms of 55 years for murder and 10 years for attempted armed robbery.

¶ 10 B. Direct Appeal

¶ 11 On direct appeal, Robinson contended that he was not proven guilty beyond a reasonable doubt. On August 3, 1998, this court affirmed the trial court's judgment. *People v. Robinson*, 1-97-0663 (1998) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12 C. Initial Postconviction Proceedings

¶ 13 Robinson tried to file a *pro se* postconviction petition in November 1998. In June 1999, Robinson inquired about the status of the petition, and was told that his file contained no record of a petition being filed. Robinson filed a *pro se* postconviction petition in February 2000 that was notarized in November 1998. Robinson asserted in part that his trial counsel was ineffective because he did not investigate or interview witnesses who would have cleared Robinson of any involvement in the murder. At the time of the shooting, five witnesses saw him on the phone taking a drug order. Robinson also stated that his appellate counsel was ineffective.

¶ 14 Defendant was appointed counsel, who filed a supplemental petition that asserted that Robinson's sentences violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The State moved to dismiss Robinson's *pro se* petition as untimely filed. The circuit court granted the State's motion

to dismiss, but this court reversed on appeal and the matter was remanded for further proceedings. *People v. Robinson*, 1-03-2292 (2004) (unpublished order under Illinois Supreme Court Rule 23).

¶ 15    In June 2007, counsel filed a supplemental postconviction petition that stated in part that trial counsel was ineffective for not investigating Nadine Lopez, Christine Lopez, and Denise Zinzer to establish an alibi defense. According to the petition, all three witnesses would have testified that they saw Robinson on the phone during or just after the shots were fired. The petition further asserted that testimony from Zinzer and Christine Lopez was evidence of actual innocence.

¶ 16    After an evidentiary hearing, the circuit court found that Robinson did not meet his burden to show that his trial counsel was ineffective or that he was actually innocent. Robinson's petition was dismissed.

¶ 17    Robinson appealed, contending that the circuit court erred in dismissing his petition where there was a reasonable probability that Zinzer's testimony would have changed the outcome in a new trial. This court affirmed the dismissal of Robinson's petition. *People v. Robinson*, 2013 IL App (1st) 112528-U.

¶ 18                    D. Successive Postconviction Petition

¶ 19    In October 2017, Robinson filed a motion for leave to file a *pro se* successive postconviction petition and a memorandum of law. In part, Robinson asserted that the detectives assigned to his case fabricated evidence against him. Robinson contended that Rodriguez testified inconsistently about the color of the gun used in the shooting. Robinson also faulted appellate postconviction counsel for only raising one issue on appeal. Postconviction counsel should have presented a witness, Robert Hague, who would have corroborated Zinzer's testimony, as well as amended the petition to add a claim that trial counsel failed to argue that deceptive testimony was presented to the grand jury.

¶ 20    On July 5, 2018, Robinson filed a "Supplement to the Pending Successive Petition for Postconviction Relief." Robinson stated that he had inquired about the status of his original successive petition with the clerk of the circuit court, but had not received a response. Robinson requested permission to supplement his petition with another issue—his sentences should run concurrently and not consecutively. Robinson asserted that under *People v. Whitney*, 188 Ill. 2d 91 (1999), the injury resulting from the murder could not be combined with the Class 1 status of the attempted robbery to trigger consecutive sentences. Though trial counsel "did not make this particular argument against his consecutive sentences at trial," a void order could be attacked at any time.

¶ 21    On January 16, 2019, the circuit court denied Robinson's motion for leave to file a successive petition. In an over nine-page written ruling, the court grouped Robinson's claims into three categories: police misconduct, issues related to Rodriguez's testimony, and postconviction counsel's failure to call Hague. The court found that the police misconduct claim was generalized, speculative, and conclusory. The issues related to Rodriguez would not have afforded Robinson relief. Also, Robinson was not prejudiced by postconviction counsel's failure to call Hague to testify at the evidentiary hearing. The court stated that Robinson did not clearly indicate whether the cause-and-prejudice or actual innocence exception would allow him to file a successive petition. However, because Robinson's underlying issues were without merit, the court did not need to resolve which test applied. Robinson did not make the requisite showing to file a successive petition, and the court denied Robinson's motion for leave to file a successive petition.

¶ 22    Robinson timely appealed.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, Robinson contends that the court's failure to analyze, or even mention, one of his proposed successive claims mandates a remand for further proceedings. Though Robinson added a consecutive sentencing claim before the court's ruling, the court did not address that claim in its denial of leave to file a successive petition. Robinson further argues that the consecutive sentencing claim was viable and should be analyzed in the broader context of Robinson's global attack on the performance of his prior attorneys.

¶ 25    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a way for a criminal defendant to assert that his federal or state constitutional rights were substantially violated in his original trial or sentencing hearing. *People v. Davis*, 2014 IL 115595, ¶ 13. The purpose of a postconviction proceeding is to inquire into constitutional issues involved in the original proceeding that have not been, and could not have been, resolved on direct appeal. *Id*. Only one postconviction proceeding is contemplated under the Act. *People v. Edwards*, 2012 IL 111711, ¶ 22. A defendant must obtain leave of court to file a successive petition (725 ILCS 5/122-1(f) (West 2016)), which may be granted if the defendant satisfies the cause-and-prejudice test (*id*.; *People v. Bland*, 2020 IL App (3d) 170705, ¶ 9). A defendant shows cause "by identifying an objective factor that impeded his *** ability to raise a specific claim" during the initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2016). A defendant shows prejudice by demonstrating that the claim not raised during the initial postconviction proceedings "so infected the trial that the resulting conviction or sentence violated due process." *Id*. The cause-and-prejudice test applies to individual claims, not to the petition as a whole. *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002). A defendant "must establish cause and prejudice as to each individual claim asserted in a successive petition." *Id*. at 463. Leave of court to file a successive petition should be denied when it is clear from the successive petition and accompanying documentation

that the claims alleged fail as a matter of law or where the successive petition with supporting documentation is insufficient to warrant further proceedings. *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 26    To review, Robinson filed a motion for leave to file a *pro se* successive postconviction petition in October 2017. Before the court ruled on it, in July 2018, Robinson filed a supplement to the pending petition that raised a consecutive sentencing claim. The circuit court's written ruling discussed the reasons for denying leave to file as to the claims in his original successive petition, but did not mention the consecutive sentencing claim. Given the level of detail in the court's ruling, we will not presume that the court considered the consecutive sentencing claim, and just omitted its analysis, as the State suggests. The absence of any reference to the consecutive sentencing claim, while the other claims were explicitly considered, indicates that the circuit court did not determine whether the consecutive sentencing claim satisfied the cause-and-prejudice test.

¶ 27    That omission was significant. The legislature intended that the cause-and-prejudice determination be made on the pleadings before the first stage of postconviction proceedings. *Smith*, 2014 IL 115946, ¶ 33. Leave to file is "expressly [conditioned] *** on the [defendant's] satisfaction of the cause-and-prejudice test." *People v. LaPointe*, 227 Ill. 2d 39, 44 (2007). Because the cause-and-prejudice test applies to individual claims, the circuit court must rule on whether each claim meets the standard before granting or denying leave to file. *People v. Thames*, 2021 IL App (1st) 180071, ¶ 84 (the Act and case law are clear that the circuit court must render a determination based on whether each claim in the successive petition meets the cause-and-prejudice test). The circuit court did not do that for Robinson's consecutive sentencing claim.

¶ 28    The next question is how to proceed. We reject the State's assertion that Robinson abandoned his consecutive sentencing claim because he did not inquire about it after the court's

ruling. While it is incumbent on a defendant to prompt the circuit court to consider whether leave should be granted and obtain a ruling on that question (*People v. Tidwell*, 236 Ill. 2d 150, 157 (2010)), Robinson did all that was required of him. Robinson filed a motion for leave to file a successive petition, tried to inquire about its status, and then filed a supplement to the petition. When he was notified that leave to file was denied, the accompanying notice stated that to preserve his right to appeal, he "must file a notice of appeal in the trial court within 30 days from the date the order was entered." If Robinson had pressed the circuit court to rule on the consecutive sentencing claim after the denial, he would have lost his right to appeal. We will not place a defendant in that position.

¶ 29    The State further states that this court should decide whether the consecutive sentencing claim satisfies the cause-and-prejudice test, citing *People v. Lee*, 344 Ill. App. 3d 851 (2003). In *Lee*, this court reviewed the merits of a summary dismissal of a first-stage *pro se* postconviction petition where the trial court's written order did not address all of the claims. *Id.* at 853. That case concerned an entirely different stage of proceedings, where the question is whether the petition shows the gist of a constitutional claim. *Id.* As discussed above, the Act and case law require the circuit court to determine whether each claim in a successive petition satisfies the cause-and-prejudice test.

¶ 30    Further, we do not have jurisdiction to review whether Robinson established cause and prejudice for his consecutive sentencing claim. Our jurisdiction "extends only to those matters in controversy which have been ruled upon by the trial court." *Goodrich v. Sprague*, 376 Ill. 80, 86 (1941). If the lower court's failure to rule is the subject of the alleged error, then "the propriety of the failure to rule itself is the question presented to the appellate court, and not the merits of the matter upon which the trial court refused to act." *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d

906, 921 (1999). The circuit court's failure to address the consecutive sentencing claim was improper, but we cannot make the first determination of whether leave to file should be granted. We reverse and remand for the circuit court to independently determine whether Robinson's consecutive sentencing claim satisfies the cause-and-prejudice test. See *Thames*, 2021 IL App (1st) 180071, ¶ 95 (where the circuit court did not rule on whether a claim met the cause-and-prejudice test, this court did not have jurisdiction to determine whether the motion for leave to file a successive petition should be granted, and the matter was remanded for the circuit court to conduct an independent analysis).

¶ 31                                      III. CONCLUSION

¶ 32    For the foregoing reasons, this cause is reversed and remanded for further proceedings.

¶ 33    Reversed and remanded.